UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

IN THE MATTER OF THE
EXTRADITION OF JHON DARWIN
LEON HERAS

MEMORANDUM AND ORDER
22-MJ-271 (TAM)

-----------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

The United States of America (the "Government"), fulfilling its treaty obligation to the Republic of Ecuador ("Ecuador"), filed a complaint on March 9, 2022, requesting that Jhon Darwin Leon Heras ("Relator" or "Leon Heras") be detained and extradited. (Complaint ("Compl."), ECF No. 1.) Leon Heras has moved for release on bond pending the resolution of extradition proceedings. (Motion for Bond ("Mot. for Bond"), ECF No. 8.) Oral argument was held on July 12, 2022, and the parties' arguments have been considered. (*See* July 12, 2022 ECF Minute Entry.) For the reasons discussed herein, Leon Heras's motion for bond is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The complaint alleges as follows: "On or about the evening of October 12, 2014, []or the early morning of October 13, 2014, Leon Heras and Cristian Marcelo Sarmiento Heras ("Sarmiento Heras") were at a late-night party with Juan Carlos Heras Cedeño ("Heras Cedeño") and Jorge Javier Urgilés Paredes ("Urgilés Paredes") and others." (Compl., ECF No. 1, ¶ 6(a).) "After the party ended, the four men went to Heras Cedeño's home and [a] nearby area to continue drinking." (*Id.*) It is further alleged that at about 1 a.m., a fight ensued, and Leon Heras and Sarmiento Heras killed Heras Cedeño and Urgilés Paredes. (*Id.*) Several witnesses claim to have heard an argument between the four men; at least one witness heard threats of violence from Leon Heras

and another claims she saw Leon Heras and Sarmiento Heras striking Heras Cedeño with a "chuzo," which is a stick reinforced with an iron spike. (*Id.* ¶¶ 6(b)–(f).)

Leon Heras has dual U.S. and Ecuadorian citizenship. (*Id.* ¶ 3; *see also* Leon Heras Aff., ECF No. 8-6, ¶ 3.) On October 15, 2014, an Ecuadorian judge issued a warrant for Leon Heras's arrest for the crime of murder as described in Article 140, items 4, 6, and 7 of Ecuador's Comprehensive Organic Penal Code. (Compl., ECF No. 1, ¶¶ 4, 5.) On June 24, 2015, the Ecuadorian government submitted a formal extradition request to U.S. officials for Leon Heras. (*See* Lindsay Decl., ECF No. 1-1, ¶ 3; Extradition Request, ECF No. 1-1, at 4.) On February 11, 2022, a magistrate judge in the Southern District of New York issued an arrest warrant for Leon Heras. (Compl., ECF No. 1, ¶ 7.) On March 9, 2022, Leon Heras was arrested in Queens, New York, taken into custody in the Eastern District of New York, and arraigned before the undersigned Magistrate Judge. (*See id.*; Mar. 9, 2022 ECF Minute Entry for Arraignment.) At the time, the Court found that Leon Heras had "presented no credible sureties to assure his appearance, but leave [was] granted to reopen and present a bail package in the future," and the Court entered a permanent order of detention. (Mar. 9, 2022 ECF Minute Entry for Arraignment.)

On May 17, 2022, Leon Heras filed a motion for bond. (*See* Mot. for Bond, ECF No. 8.) On May 26, 2022, the Government filed a first response in opposition to Leon Heras's motion for bond. (First Resp. in Opp'n, ECF No. 9.) On July 12, 2022, the Court held a bond hearing and reserved decision as to the bond application. (*See* June 8, 2022 ECF Order; July 12, 2022 ECF Minute Entry; July 12, 2022 Hr'g Tr. ("Hr'g Tr."), ECF No. 13.) On July 13, 2022, Leon Heras filed a first response in support of his motion for bond. (First Resp. in Supp., ECF No. 11.) On July 14, 2022, the Government filed a second response in opposition. (Second Resp. in Opp'n, ECF No. 14.) Finally, on August

2

2, 2022, Leon Heras filed a second response in support of his motion. (Second Resp. in Supp., ECF No. 15.)

## DISCUSSION

### I. Legal Standards

In domestic criminal litigation, pretrial release is governed by the United States Bail Reform Act of 1984, which creates a presumption in favor of a defendant being released pending trial unless the Government meets its burden to show that the defendant is a flight risk or a danger to the community. *See* 18 U.S.C. §§ 3141, 3142(b). However, in the extradition context, the Bail Reform Act does not apply because an extradition proceeding is not a criminal prosecution for violations of U.S. law. *See* 18 U.S.C. §§ 3181 *et seq.*; 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2); *Austin v. Healey*, 5 F.3d 598, 603 (2d Cir. 1993) ("We have repeatedly noted . . . that an extradition hearing is not a criminal prosecution . . . ."); *Borodin v. Ashcroft*, 136 F. Supp. 2d 125, 128 (E.D.N.Y. 2001).

In contrast, the statutes governing extradition do not provide for bail. Instead, "[i]n extradition proceedings[,] the presumption is against bail because of the nation's foreign relations interest in successfully producing extradited persons." *United States v. Messina*, 566 F. Supp. 740, 742 (E.D.N.Y. 1983); *see also In re Extradition of Garcia*, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009). A presumption against pre-extradition release exists because if the accused were to be released and flee, forfeiture of a bond "would hardly meet the international demand" and could cause the U.S. government "serious embarrassment." *Wright v. Henkel*, 190 U.S. 40, 62 (1903); *see also In re Garcia*, 615 F. Supp. 2d at 166 (observing that in extradition proceedings, "[t]he rationale for the presumption against bail is the United States Government's overriding interest in complying with its treaty obligations").

3

For these reasons, potential extraditees are typically denied bail in the absence of "special circumstances." *Wright*, 190 U.S. at 63; *see also United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (per curiam); *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989); *In re Extradition of Kapoor*, No. 11-MJ-456 (RML), 2011 WL 2296535, at *2 (E.D.N.Y. June 7, 2011). Such special circumstances arise "'only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory.'" *Leitner*, 784 F.2d at 160 (quoting *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909)). Special circumstances include those where a relator has:

> "(1) raised substantial claims which have a high probability of success on the merits; (2) suffered a serious deterioration of health; (3) shown that there is an unusual delay in the appeals process; (4) shown that the extradition proceeding will be unusually long and complex; (5) shown that the requesting country would grant bail in a comparable extradition case; and (6) shown by clear and convincing evidence that bail is available for the substantive offense in the requesting country."

*In re Kapoor*, 2011 WL 2296535, at *3 (quoting *Duca v. United States*, No. 95-CV-713 (DGT), 1995 WL 428636, at *15 (E.D.N.Y. July 7, 1995), *aff'd sub nom. Lo Duca v. United States*, 93 F.3d 1100 (2d Cir. 1996)). In addition, "'related to the issue of delay in extradition proceedings, courts have found special circumstances when there is a lack of any diplomatic necessity for denying bail.'" *Id.* (alteration and quotation marks omitted) (quoting *United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 56 (D. Mass. 2010)).

"Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition." *In re Extradition of Mainero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996) (citing *In re Extradition of Smyth*, 976 F.2d 1535, 1535–36 (9th Cir. 1992)); *see also In re Extradition of Kyung Joon Kim*, No. 04-CV-3886 (ABC) (PLA), 2004 WL 5782517, at *2 (C.D. Cal. July 1, 2004); *In re Extradition of Vladimir Blasko*, No. 11-MC-0067 (DAD) (SAB), 2018 WL 3691859, at *4 (E.D. Cal. Aug. 1, 2018).

4

In addition, a person seeking release in the extradition context must also establish that they are not a flight risk or a danger to the community. *See, e.g., In re Kapoor*, 2011 WL 2296535, at *1 ("In addition [to establishing special circumstances], she must show that she is 'neither a risk of flight nor a danger to the community.'" (quoting *United States v. Ramnath*, 533 F. Supp. 2d 662, 665 (E.D. Tex. 2008))); *see also Castaneda-Castillo*, 739 F. Supp. 2d at 63; *In re Blasko*, 2018 WL 3691859, at *11; *In re Extradition of Gonzalez*, 52 F. Supp. 2d 725, 735 (W.D. La. 1999); *In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1035 (C.D. Cal. 2006). A person facing extradition must show that they are not a risk of flight or a danger to the community by clear and convincing evidence. *In re Extradition of Mednard*, No. 21-MJ-39 (RER), 2021 WL 1264260, at *2 (E.D.N.Y. Apr. 5, 2021).

## II. Analysis

### A. Risk of Flight

The Court first finds that Leon Heras presents a significant risk of flight. According to his affidavit in opposition to extradition, Leon Heras was detained by U.S. border officials on February 25, 2015, and told of the possibility that Ecuador was looking for him in connection with an "incident in 2014," but was then released and told that "Ecuador did not want" him. (Leon Heras Aff., ECF No. 8-6, ¶ 11.) However, Leon Heras is now fully aware that Ecuador is seeking his extradition to stand trial for murder. If convicted, he faces substantial prison time, which provides a significant incentive to flee. (*See* Gallegos Rodas Aff., ECF No. 8-14, ¶ 17 (stating that murder is punishable in Ecuador by 22 to 26 years in prison); Article 140 of Ecuadorian Penal Law; ECF No. 8-5, at 1.) *See United States v. Boustani*, 356 F. Supp. 3d 246, 252 (E.D.N.Y. 2019) ("When faced with the possibility of a significant prison term, defendants have a strong incentive to flee."); *see also In re Extradition of Martinelli Berrocal*, 263 F. Supp. 3d 1280,

5

1305-06 (S.D. Fla. 2017) (finding that the defendant posed a flight risk due to the length of his potential sentence, despite significant and strong ties to his community); *United States v. Snyder*, No. 13-MJ-7082, 2013 WL 1364275, at *3 (D. Ariz. Apr. 3, 2013) (same); *In re Extradition of Campillo Valles*, 36 F. Supp. 2d 1228, 1231 (S.D. Cal. 1998) (same).

Not only does Leon Heras face substantial prison time, he has also unequivocally asserted in his affidavit that he fears for his life should he be extradited to Ecuador. (*See* Leon Heras Aff., ECF No. 8-6, ¶¶ 14, 18.) Although sympathetic to his fears, including his fear of being tortured in Ecuador, as discussed further below, if the Court credits Leon Heras's sworn affidavit, the inescapable conclusion is that he has almost no incentive to appear to face further extradition proceedings.[1] Indeed, according to his own account, he sees extradition to Ecuador as the equivalent of a "death sentence." (*Id.* ¶ 18.) On the other hand, Leon Heras argues that he does not have the resources to flee, and that he has no ties to any jurisdiction other than Ecuador. (Mem. in Supp. of Bond, ECF No. 8-15, at 24.) He also represents that he is willing to abide by any combination of conditions set by the Court, including electronic monitoring, home detention, and the like. (*Id.*)

However, Leon Heras has failed to establish that he does not present a flight risk. The record weighs against him. As set forth above, Heras Cedeño and Urgilés Paredes

---

[1] This conclusion is bolstered by the fact that the standard of proof applicable at the extradition stage is probable cause. *See Sindona v. Grant*, 619 F.2d 167, 175 (2d Cir. 1980). To establish probable cause, the Government "must show evidence 'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" *In re Extradition of Gonzalez*, 52 F. Supp. 2d 725, 736 (W.D. La. 1999) (quoting *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973)). Leon Heras has indicated his intention to challenge the sufficiency of the evidence in the extradition proceeding. But given the number of possible witnesses identified in the extradition materials and the relatively low standard of proof, the Court finds, as discussed below, that Leon Heras has not presented a high likelihood of success in defeating extradition, and does not have a significant incentive to appear for further proceedings. (*See* Mem. in Supp. of Bond, ECF No. 8-15, at 17.)

were allegedly murdered after an evening drinking with Leon Heras and Sarmiento Heras, a co-defendant who remains in Ecuador. (Compl., ECF No. 1, ¶¶ 6(a)–(e); *see also* Mem. in Supp. of Bond, ECF No. 8-15, at 2–4 (discussing Ecuador's proffered evidence).) As noted above, various witnesses heard Leon Heras threatening violence and arguing (Compl., ECF No. 1, ¶¶ 6(b)–(e)), with one witness identifying Leon Heras as one of the people who stabbed Heras Cedeño with a chuzo. (*See id.* ¶ 6(f); Gallegos Rodas Aff., ECF No. 8-14, ¶ 15.) Considering the evidence proffered in support of the extradition request, his fear of returning to Ecuador in custody, and the substantial sentence he could face if convicted in Ecuador, the Court finds that Leon Heras poses a significant risk of flight.

Attempting to craft restrictive bond conditions so as to mitigate against this significant risk of flight is neither possible nor appropriate in the extradition context. As the Second Circuit has observed in the context of pretrial release, "[t]he sort of electronic surveillance suggested by the defendant[] . . . can be circumvented. Home detention and electronic monitoring 'at best elaborately replicate a detention facility without the confidence of security such a facility instills.'" *United States v. Millan*, 4 F.3d 1038, 1048–49 (2d Cir. 1993) (quoting *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993) (internal quotation marks and citation omitted)); *see also United States v. LaFontaine*, 210 F.3d 125, 135 (2d Cir. 2000). In short, complex release conditions do not provide the Court with the assurance that a person who has a substantial incentive to flee will actually appear.

For all of these reasons, the Court finds that Leon Heras has not met his burden to establish that he does not present a risk of flight. In addition, he has failed to demonstrate special circumstances, as discussed below.[2]

### B. Special Circumstances

When evaluating whether sufficient special circumstances exist to warrant release in the extradition context, courts consider a confluence of factors to determine if, individually or in combination, the circumstances are appropriately unique. *See Castaneda-Castillo*, 739 F. Supp. 2d at 55; *see also United States v. Valentino*, No. 18-MJ-00146, 2018 WL 2187645, at *2 (S.D. Tex. May 11, 2018) ("Special circumstances can arise under a variety of conditions, or by virtue of a combination of conditions that taken together create a compelling case for release on bail.").

Leon Heras argues that several special circumstances justify his release on bond in this case. The Court analyzes each claimed special circumstance in turn.

#### 1. Diplomatic Necessity for Detention

Defense counsel argues there is no diplomatic necessity to deny Leon Heras's release. For this, they rely on Ecuador's purported failure to request Leon Heras's detention by U.S. Customs officials at John F. Kennedy Airport in February 2015 after learning of his return from a trip abroad, as discussed above. (*See* Mem. in Supp. of Bond, ECF No. 8-15, at 12–14.)

---

[2] The Government argues that Leon Heras poses a danger to the community because he "is wanted in Ecuador for brutally murdering two victims." (First Resp. in Opp'n, ECF No. 9, at 5.) Defense counsel argues that Leon Heras is not a danger to the community because although he has been accused of a violent crime in Ecuador, "he has not been accused or convicted of any crime in the United States during the almost 20 years he has lived here." (Mem. in Supp. of Bond, ECF No. 8-15, at 24–25.) The Court need not reach a determination of whether Leon Heras poses a danger to the community because the Court finds that he presents a risk of flight and has not shown any special circumstances, or combination of special circumstances, that warrant his release.

8

Courts have found that if a requesting country has delayed seeking the extradition of a person in the United States, it may show that a particular individual's prosecution is not a priority to that country, undercutting the diplomatic necessity for detention. *See In re Kapoor*, 2011 WL 2296535, at *3; *In re Extradition of Chapman*, 459 F. Supp. 2d 1024, 1027 (D. Haw. 2006). Typically, courts find this special circumstance when a requesting government unduly delays in submitting an extradition request after commencing an investigation or issuing a fugitive's arrest warrant. *See In re Kapoor*, 2011 WL 2296535, at *3; *In re Chapman*, 459 F. Supp. 2d at 1027.

For example, in *Chapman*, Mexico waited three years after the underlying offense to submit an extradition request for a U.S.-based defendant. *In re Chapman*, 459 F. Supp. 2d at 1027. The court found that the delay showed the country had "not made prosecution of the offense a priority," constituting a special circumstance to be considered in determining the availability of bail. *Id.* In *Castaneda-Castillo*, Peru had not actively pursued a defendant's 25-year-old charge and could not explain a three-year lag between the issuance of a court order commencing investigation and the filing of a formal extradition request. *Castaneda-Castillo*, 739 F. Supp. 2d at 57–58. The court found that the delay sufficiently demonstrated a lack of diplomatic necessity for a special circumstance consideration. *Id.* at 58. Likewise, in *In re Kapoor*, the court found that a delay of approximately four years between India's issuing an arrest warrant and filing the extradition request indicated a lack of diplomatic necessity that could be considered when determining bail. *In re Kapoor*, 2011 WL 2296535, at *3. Similarly, in *Taitz*, South Africa's five-year delay in seeking extradition for the defendant's failure to pay tax on diamond sales was coupled with complex circumstances, such as: (1) the charges included 434 total counts of fraud that each presented a legal question related to extradition; (2) the extradition hearing would not take place for at least six months;

(3) the defendant was allergic to the food and laundry soap used in the correctional facilities; (4) the defendant could not practice his religion in the correctional facility; and (5) South Africa had recently granted bail to a defendant facing extradition for violent crimes in the United States. *United States v. Taitz,* 130 F.R.D. 442, 445–47 (S.D. Cal. 1990).

Leon Heras relies on, *inter alia*, *Kapoor* and *Taitz* to support the argument that his extradition lacks diplomatic necessity. (Mem. in Supp. of Bond, ECF No. 8-15, at 12–13.) However, the facts of his case are dissimilar to both of these cases. The offenses charged in *In re Kapoor* and *Taitz* were nonviolent financial crimes with complex underlying circumstances. *See In re Kapoor*, 2011 WL 2296535, at *1–2; *Taitz,* 130 F.R.D. at 443–44. In addition, in *In re Kapoor*, a lack of diplomatic necessity was coupled with the fact that both of Kapoor's co-defendants had already been released on bail in India for the same underlying offense. *In re Kapoor*, 2011 WL 2296535, at *3. Moreover, India's initial investigation into Kapoor began in 1999 and the extradition request at issue was put forward in 2010, an eleven-year delay for a nonviolent financial crime. *Id.* at *1. As discussed above, *Taitz* was also a fraud case and the court found many applicable special circumstances that warranted Taitz's release.[3]

---

[3] Other case examples are also dissimilar to the facts presented here. In *Kollmar*, for example, a twenty-year delay in an investigation combined with a yearlong delay between the defendant's photo being identified and an extradition request being submitted was found to exhibit a lack of diplomatic necessity. *United States v. Kollmar*, No. 19-MJ-70677 (MAG) (KAW), 2019 WL 2163005, at *3–4 (N.D. Cal. May 17, 2019). In *Wroclawski*, an eleven-year delay in Poland's seeking a defendant's extradition was found to be a special circumstance favoring bail. *Wroclawski v. United States*, 634 F. Supp. 2d 1003, 1008 (D. Ariz. 2009). In *Bowman*, the court found a lack of diplomatic necessity as a special circumstance when Scotland's investigation into a fifty-year-old sexual assault case had several unexplained multiyear delays between witness interviews and the final extradition request. *United States v. Bowman*, No. 19-MJ-05089 (JLB), 2020 WL 835342, at *5–7 (S.D. Cal. Feb. 20, 2020). In *Blasko*, a court found that Slovakia showed a lack of diplomatic necessity in the extradition of a defendant after it failed multiple times to submit extradition paperwork despite multiple detentions of the defendant by U.S. authorities based on the underlying Slovakian arrest warrant. *In re Extradition of Vladimir Blasko*, No. 11-MC-0067 (DAD) (SAB), 2018 WL 3691859, at *8–9 (E.D. Cal. Aug. 1, 2018).

Nothing about the *Kapoor* or *Taitz* cases is similar to Leon Heras's case. Here, Leon Heras is wanted for murder, a brutal but noncomplex violent crime. Moreover, the only evidence he offers in support of the argument that Ecuador did not prioritize his extradition is his own account of having been detained in February 2015 while returning to the United States from a trip abroad, and then told that Ecuador did not want him so he was free to leave. (Mem. in Supp. of Bond, ECF No. 8-15, at 14.) However, as set forth above, the Ecuadorian authorities issued the arrest warrant for Leon Heras *one day* after the alleged murder, as well as a preventive detention order that sought to prohibit Leon Heras from leaving the country. (*See* Compl., ECF No. 1, ¶¶ 4, 5, 6(a); Exhibit B, ECF No. 1-2, at 54–57.) In addition, Ecuador formally requested his extradition on June 24, 2015, only eight months after the Ecuadorian arrest warrant was issued. (Lindsay Decl., ECF No. 1-1, ¶ 3; Extradition Request, ECF No. 1-1, at 4; Compl., ECF No. 1, ¶¶ 4, 5.)

Moreover, it is undisputed that Ecuador had not yet submitted a diplomatic request for Leon Heras's extradition as of the time he says he was stopped and let go in February 2015. (*See* June 2015 Extradition Request, ECF No. 1-1, at 4; First Resp. in Opp'n, ECF No. 9, at 7; Leon Heras Aff., ECF No. 8-6, ¶ 11.) Accordingly, there are questions as to whether Ecuador had a legal basis to request Leon Heras's detention at that time. (*See* Hr'g Tr., ECF No. 13, at 11:24–12:19.) Defense counsel argues that Ecuador could have requested detention through 18 U.S.C. § 3187. (First Resp. in Supp., ECF No. 11, at 1–2.) Even assuming *arguendo* that is legally correct, Ecuador's possible failure to request Leon Heras's detention prior to their extradition request being finalized does not establish a special circumstance favoring release on bond as "not all delays in prosecution show a lack of diplomatic necessity." *In re Extradition of Drumm*, 150 F. Supp. 3d 92, 98 (D. Mass. 2015). As evidenced by the aforementioned cases, a lack

11

of diplomatic necessity finding requires a sufficiently unique set of circumstances, such as ample delays unrelated to the usual course of an investigation or charging.

Here, although Ecuador may have had a chance to achieve Leon Heras's detention in 2015, his argument that such detention was possible is speculative. And even if he is right that this was an unusual circumstance, "[m]any extradition cases entail unusual and unfortunate circumstances" but do not present "special circumstances sufficient to overcome the presumption against bail." *Borodin*, 136 F. Supp. 2d at 132. This is such a case. Even if the Court fully credits Leon Heras's self-serving hearsay account of what happened when he was detained at the border, that encounter is insufficient to demonstrate lack of diplomatic necessity. Rather, Ecuador's prompt issuance of an arrest warrant and filing of a formal extradition package strongly suggest the case is important to them. For all of these reasons, the Court does not find a lack of diplomatic necessity.

    2. <u>Lack of Substantial Claims in Bar of Extradition</u>

In *Salerno*, the court recognized that a special circumstance may exist where a relator has raised substantial claims that show a high probability of success in the extradition proceedings. *Salerno*, 878 F.2d at 317. However, by definition, this circumstance presents a high bar, which was not even met in *Salerno* itself. *Id.* at 317–18. Similarly, in *Blasko*, the court found the defendant had demonstrated Slovakia's lack of diplomatic necessity in his detention but did not find that he had shown a high probability of success on the merits. *In re Blasko*, 2018 WL 3691859, at *6–7. This was despite the defendant's showing that the only evidence supporting probable cause was the *in abstentia* testimony of ten witnesses who were not under the penalty of perjury. *Id.* at *7.

Here, Leon Heras argues that the evidence offered in support of his extradition is insufficient to establish probable cause, in part because proving his involvement in the murder appears to be dependent upon a witness who cannot legally testify. (Mem. in Supp. of Bond, ECF No. 8-15, at 17.) However, like in *Blasko*, this argument fails. At the bail stage, "it would be premature for the court to conclude that [a relator] has a 'high probability' of prevailing at his extradition hearing." *In re Blasko*, 2018 WL 3691859, at *7 (citation omitted). Leon Heras's challenges as to the reliability of the eyewitness's accounts are similarly misplaced. "The credibility of witnesses and the weight to be accorded their testimony is solely within the province of the extradition magistrate." *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986), *cert. denied*, 479 U.S. 882 (1986). Given the body of evidence and corroboration provided by the accounts of various witnesses, Leon Heras has not established a high probability that he will defeat extradition due to a lack of probable cause.

Second, Leon Heras argues that he has established a high probability of success by showing that the elements of murder in the Ecuadorian Penal Code are not met here. (Mem. in Supp. of Bond, ECF No. 8-15, at 15–16.) But again, that is not for the Court to determine in the context of evaluating whether to order a relator's release on bond. At an extradition hearing, let alone on a motion for bail, the "judicial officer's inquiry is confined to the following: whether a valid treaty exists; whether the crime charged is covered by the relevant treaty; and whether the evidence marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof." *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000). At the extradition stage of the proceedings, "[w]hat is at issue in the proceeding . . . 'is not punishability but prosecutability.'" *In re Extradition of McMullen*, 989 F.2d 603, 611 (2d Cir. 1993) (quoting M. Cherif Bassiouni, *International Extradition and World Public Order* 524 (1974)).

13

There are many reasons why courts have found it inappropriate to overly examine foreign law in the early stages of an extradition proceeding. International comity and judicial modesty are two of the major reasons as "[t]he possibility of error warns us to be even more cautious of expanding judicial power over extradition matters." *In re Assarsson*, 635 F.2d 1237, 1244 (7th Cir. 1980). Any arguments that essentially demand a country's compliance with its own laws are more properly reserved for the courts of that country. *See Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *see also Ahmad v. Wigen*, 910 F.2d 1063, 1066–67 (2d Cir. 1990) ("The interests of international comity are ill-served by requiring a foreign nation . . . to satisfy a United States district judge concerning the fairness of its laws and the manner in which they are enforced."). Accordingly, U.S. courts are strongly discouraged from reviewing whether the demanding country has complied with its own law and, indeed, it is error to do so except to the limited extent necessary to ensure compliance with the applicable extradition treaty. *See United States ex rel. Petrushansky v. Marasco*, 325 F.2d 562, 565 (2d Cir. 1963).

Additionally, it is worth noting that the existence of a potentially valid legal argument does not necessarily demonstrate a high probability of success against extradition. *See Taylor v. McDermott*, No. 20-CV-11272 (IT), 2020 WL 4569693, at *5 (D. Mass. Aug. 7, 2020). In *Taylor v. McDermott*, the relators argued that as charged, their conduct did not squarely violate the portion of the Japanese Penal Code for which their extradition was sought. *Taylor*, 2020 WL 4569693, at *5–7. The court held that although petitioners "may be able to present a non-frivolous legal defense along these grounds . . . they did not establish the high likelihood of success necessary to potentially merit release on bail." *Id.* at *3.

14

The same is true here. In the bail context, Leon Heras's argument as to the legal sufficiency of the charge under Ecuadorian law does not demonstrate the high probability of success required to establish a special circumstance.

### 3. Future Delays in Proceedings

Leon Heras argues that the complex issues he intends to raise (like challenging Ecuador's probable cause and his extradition being ultimately barred as a violation of the United Nations Convention Against Torture) will lead to inevitable delays in the extradition process and constitute a special circumstance. (Mem. in Supp. of Bond, ECF No. 8-15, at 18–20.) Further, Leon Heras argues that even if extradition is ordered, he will raise every available appeal to him, including requesting relief from the State Department based on his argument that he will be tortured if returned to Ecuador. (*Id.* at 20.)

By way of background, the Court notes that the Convention Against Torture has been in effect in the United States since November 20, 1994. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment art. 3, Dec. 10, 1984, Treaty Doc No. 100–20, 1465 U.N.T.S. 85, 23 I.L.M. 1027 (1984), *available at* https://treaties.un.org/pages/showdetails.aspx?objid=080000028003d679. Article 3 of the Convention provides in relevant part that "[n]o State Party shall expel, return . . . or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." *Id.* CAT was implemented in the United States via the Foreign Affairs Reform and Restructuring Act of 1988 ("FARRA"), Pub. L. No. 105–277, div. G, Title XXII, § 2242, 112 Stat. 2681–822 (Oct. 21, 1998). FARRA prevents extradition if the person for whom extradition is sought can meet their burden to show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2); *see also*

15

22 C.F.R. § 95.2. To succeed on a CAT claim, a petitioner must establish that it is more likely than not they will "be tortured in the State requesting extradition . . . ." 22 C.F.R. §§ 95.2(b) & 95.3. However, these arguments are not "to be considered by this Court in evaluating the propriety of extradition." *In re Extradition of Ogorek*, No. 20-MJ-1099 (SJB), 2021 WL 1202244, at *3 (E.D.N.Y. Mar. 31, 2022); *see also Sindona v. Grant*, 619 F.2d 167, 174 (2d Cir. 1980); *In re Extradition of Al-Nouri*, No. 20-MJ-08033 (PHX) (MTM), 2022 WL 993781, at *13 (D. Ariz. Apr. 1, 2022).

Accordingly, in the context of this application for release on bond, the Court declines to reach the question of whether Leon Heras has demonstrated that it is more likely than not that he will be tortured if returned to Ecuador. However, because Leon Heras has clearly indicated that he intends to advance a CAT claim, to the judicial or executive branch, or both, he argues that this could result in a protracted delay. (*See* Mem. in Supp. of Bond, ECF No. 8-15, at 19–20.) *See Salerno*, 878 F.2d at 317 (recognizing that a delay in the extradition process qualifies as a "special circumstance" justifying bail); *In re Kapoor*, 2011 WL 2296535, at *4 (same). However, in this case, the possibility of delay does not qualify as a special circumstance. *See United States v. Kin-Hong*, 83 F.3d 523, 525 (1st Cir. 1996) (per curiam). "To the extent the defendant's concern about lengthy proceedings encompasses concerns about potential post-extradition hearing litigation, such as appeals from any decisions this Court might render, that is too speculative a ground at this juncture to constitute a special circumstance justifying release." *In re Drumm*, 150 F. Supp. 3d at 99. There is no reason to believe that this case will take longer than other, similar extradition cases. In addition, the Court questions whether the anticipated delay caused by Leon Heras's "own tactical decisions" may serve as a basis to argue a special circumstance. *In re Blasko*, 2018 WL 3691859, at *6; *see also Kin-Hong*, 83 F.3d at 525 (observing that petitioner was responsible for some of the

16

possible delay in proceedings). For these reasons, on the current record, the Court finds that there is insufficient evidence from which to conclude that this case will involve an unusual delay of such length that release on bond is warranted.

4. The Availability of Bail in Ecuador

Finally, without establishing any other special circumstances, the availability of bail in a requesting country for a similar offense or for extradition is not, in and of itself, a special circumstance. *In re Kim*, 2004 WL 5782517, at *2–3. This is because in many, if not most, instances, bail would be available in the extraditing country for the charged offense. *Id.* at *2. In addition, the mere possibility of bail does not qualify as a special circumstance. *In re Extradition of Sacirbegovic*, 280 F. Supp. 2d 81, 86–87 (S.D.N.Y. 2003).

## CONCLUSION

For the reasons discussed above, Leon Heras has not shown, by clear and convincing evidence, that he does not pose a risk of flight. He has also failed to establish any special circumstances, or combination of special circumstances, which demonstrate that his release on bond pending extradition proceedings is required in the interest of justice. *See Leitner*, 784 F.2d at 160. Leon Heras's motion for bail (ECF No. 8) is denied.

**SO ORDERED.**

Dated: Brooklyn, New York
August 31, 2022

*Taryn A. Merkl*
_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

17