UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

IN THE MATTER OF THE
EXTRADITION OF JHON DARWIN
LEON HERAS

**MEMORANDUM & ORDER**
22-MJ-271 (TAM)

----------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

The United States of America (the "Government"), fulfilling its treaty obligation to the Republic of Ecuador ("Ecuador"), filed a complaint on March 9, 2022, requesting that Jhon Darwin Leon Heras ("Relator" or "Leon Heras") be detained and extradited. (Complaint ("Compl."), ECF No. 1.) On September 20, 2022, Leon Heras moved for discovery. (Mot. for Discovery, ECF No. 18). For the reasons discussed herein, Leon Heras's motion for discovery is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The complaint alleges as follows: "On or about the evening of October 12, 2014, []or the early morning of October 13, 2014, Leon Heras and Cristian Marcelo Sarmiento Heras ("Sarmiento Heras") were at a late-night party with Juan Carlos Heras Cedeño ("Heras Cedeño"), Jorge Javier Urgilés Paredes ("Urgilés Paredes"), and others." (Compl., ECF No. 1, ¶ 6(a).) "After the party ended, the four men went to Heras Cedeño's home and [a] nearby area to continue drinking." (*Id.*) It is further alleged that at about 1 a.m., a fight ensued, and Leon Heras and Sarmiento Heras killed Heras Cedeño and Urgilés Paredes. (*Id.*) Several witnesses claim to have heard an argument between the four men; at least one witness heard threats of violence from Leon Heras

and another claimed she saw Leon Heras and Sarmiento Heras striking Heras Cedeño with a "chuzo," which is a stick reinforced with an iron spike.[1] (*Id.* ¶¶ 6(b)–(f).)

Leon Heras has dual U.S. and Ecuadorian citizenship. (*Id.* ¶ 3; *see also* Leon Heras Aff., ECF No. 8-6, ¶ 3.) On October 15, 2014, an Ecuadorian judge issued a warrant for Leon Heras's arrest for the crime of murder as described in Article 140, items 4, 6, and 7 of Ecuador's Comprehensive Organic Penal Code. (Compl., ECF No. 1, ¶¶ 4, 5.) On June 24, 2015, the Ecuadorian government submitted a formal extradition request to U.S. officials for Leon Heras. (*See* Lindsay Decl., ECF No. 1-1, ¶ 3; Extradition Request, ECF No. 1-1, at 4.) On February 11, 2022, a magistrate judge in the Southern District of New York issued an arrest warrant for Leon Heras. (Compl., ECF No. 1, ¶ 7.) On March 9, 2022, Leon Heras was arrested in Queens, New York, taken into custody in the Eastern District of New York, and arraigned before the undersigned Magistrate Judge. (*See id.*; Mar. 9, 2022 ECF Minute Entry for Arraignment.) At the time, the Court found that Leon Heras had "presented no credible sureties to assure his appearance but leave [was] granted to reopen and present a bail package in the future," and the Court entered a permanent order of detention. (Mar. 9, 2022 ECF Minute Entry for Arraignment.)

On May 17, 2022, Leon Heras filed a motion for bond. (*See* Mot. for Bond, ECF No. 8.) After a bond hearing and full briefing on the motion, the Court denied the motion for bond on August 31, 2022. (Mem. & Order, ECF No. 16.) Shortly thereafter, Leon Heras moved for discovery. (Mot. for Discovery, ECF No. 18.) On September 22,

---

[1] The Court notes that in a supplemental submission filed in September 2022, after Leon Heras's arrest on the complaint, a description of the evidence introduced at the trial of Leon Heras's co-defendant, Sarmiento Heras, indicated that the court did not rely on the testimony of Maria Carmen Mejia, the witness who had claimed to have seen the defendants stabbing Heras Cedeño with the chuzo, for the reasons discussed *infra* note 3. (*See* Supplement, ECF No. 19-1, at ECF pages 38, 52, & 64.)

2022, the Ecuadorian government filed a supplemental submission in further support of extradition. (*See* Lindsay Decl. and Supplemental Submission ("Supplement"), ECF No. 19-1.) The Supplement includes the formal diplomatic note and documents submitted in support of Ecuador's extradition request. (*Id.* at ECF page 7 (certification from U.S. Ambassador to Ecuador).) The Supplement also includes a copy of the Ecuadorian judgment against Sarmiento Heras, which provides a detailed summary of the evidence that the Ecuadorian court considered at the trial of Leon Heras's co-defendant. (*Id.* at ECF pages 44–66.)

## DISCUSSION

### I. Legal Standards

Evidentiary rules that govern criminal cases "are not applicable" to extradition proceedings and an "'extradition hearing is not the occasion for an adjudication of guilt or innocence.'" *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984) (quoting *Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981)). As the Second Circuit has squarely held, at an extradition hearing, "[i]n the exercise of the extraditing judge's discretion, a fugitive may be permitted to offer explanatory testimony, but may not offer proof which contradicts that of the demanding country." *Id.* This is because the introduction of contradictory evidence could impermissibly expand the scope of an extradition hearing to a trial on the merits. *See Jhirad v. Ferrandina*, 536 F.2d 478, 484 (2d Cir. 1976) (citing the "well-entrenched rule that extradition proceedings are not to be converted into a dress rehearsal trial"). The Supreme Court cautioned against such an approach long ago, observing that the exclusion of evidence at an extradition hearing relating to the establishment of a defense was not error. *Collins v. Loisel*, 259 U.S. 309, 316 (1922) (observing that recognition of a right to introduce evidence of a defense at the extradition stage would risk contravention of applicable extradition treaties by

3

requiring a "full hearing and trial of [the] case here; and that might compel the demanding government to produce all its evidence here").

In an extradition proceeding, the demanding state does not need to prove actual guilt; it has to show only probable cause. *Shapiro v. Ferrandina*, 355 F. Supp. 563, 571 (S.D.N.Y. 1973), *aff'd as modified*, 478 F.2d 894 (2d Cir. 1973). Accordingly, the purpose of permitting explanatory evidence is to afford a relator "the opportunity to present reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause." *In re Sindona*, 450 F. Supp. 672, 685 (S.D.N.Y. 1978). "The improbability or the vagueness of testimony may destroy the probability of guilt, but the tendering of witnesses who testify to an opposite version of the facts does not. The latter must await trial on the merits. And exclusion of evidence relating to the defense is not error." *Shapiro*, 355 F. Supp. at 572.

Accordingly, if discovery is warranted in connection with extradition proceedings,[2] courts generally limit discovery to evidence that *explains* rather than contradicts the demanding country's proof. *See, e.g.*, *In re Requested Extradition of McMullen*, No. 86-CR-MISC-1 (KAR), 1988 WL 70296, at *5–6 (S.D.N.Y June 24, 1988). For example, as the Ninth Circuit has observed, discovery has been permitted "to the extent it related to the question whether there existed probable cause tying [the relator] to [the offense for which extradition is sought]." *In re Extradition of Kraiselburd*, 786 F.2d 1395, 1399 (9th Cir. 1986). At the same time, the Ninth Circuit upheld the magistrate

---

[2] Although an extradition respondent has no right to discovery, courts have found that the extradition court does have the power to order "such discovery procedures as law and justice require." *In re Requested Extradition of McMullen*, No. 86-CR-MISC-1 (KAR), 1988 WL 70296, at *5 (S.D.N.Y June 24, 1988) (internal quotation marks omitted). Any such discovery is limited and lies within the discretion of the extraditing magistrate. *Jhirad v. Ferrandina*, 377 F. Supp. 34, 37 (S.D.N.Y. 1974) ("under the traditional extradition standards discovery is limited and discretionary"), *aff'd*, 536 F.2d 478, 484 (2d Cir. 1976), *cert. denied*, 429 U.S. 833 (1976). The Court need not reach the scope of its authority to order discovery here since the Court finds that the discovery requests are not warranted on the current record.

4

judge's limitations on discovery given the narrow purpose of extradition proceedings. *Id.*

The case of *In re Pena-Bencosme*, 341 F. App'x 681 (2d Cir. 2009), is instructive. In *Pena-Bencosme*, the relator submitted evidence suggesting that the victim "provoked the fatal confrontation with Pena-Bencosme, that [the victim] shot first, and that Pena-Bencosme returned fire, if at all, only in self defense." *Id.* at 683. On habeas review following the determination that Pena-Bencosme should be extradited, the Second Circuit observed that such evidence was not relevant, reiterating that the requirement underlying extradition is "that a requesting country establish only probable cause" and that, as a result, "the existence of evidence contradicting or calling into question the requesting state's primary evidence ordinarily has no import." *Id.*

## II. Analysis

In his motion for discovery, Leon Heras has requested the following materials: (a) a transcript of the testimony offered at the trial of his co-defendant, Sarmiento Heras; (b) maps and/or documents showing the place of residence of a specific witness, Maria Carmen Mejia; (c) written statements from witnesses, including a statement of Maria Narcisa Ochoa Heras, and "[a]ny other witness statements taken by Ecuadorian law enforcement"; (d) identities of the individuals who were at a party that occurred before the murders; (e) documents relating to whether or not the victims' bodies were moved after death and their times of death; (f) the opportunity to depose a number of witnesses, on the theory that their statements conflict, and because of "Ms. Mejia's vantage point and ability to see the fight," and (g) documents relating to communications between U.S. government agents and the Ecuadorian government concerning Leon Heras's temporary detention at John F. Kennedy Airport when he arrived at the U.S. border in February of 2015. (Mot. for Discovery, ECF 18, at 2–4.)

5

These discovery requests are extremely broad. Leon Heras seeks multiple categories of documents, detailed evidence gathered in Ecuador, and to take depositions. In addition, much of the information he seeks appears to pertain to efforts to discredit witnesses and to establish a self-defense or "mutual combat" defense claim. (*Id.*) For example, Leon Heras argues that further witness testimony could provide explanatory evidence concerning "how the fight started and whether it was culpable in nature," as well as whether the fight was "in fact a murder or whether it was a mutual combat." (Mot. for Discovery, ECF No. 18, at 3; *see also id.* at 2 (positing that the transcript of Sarmiento Heras's trial would be relevant to determine whether the killing of Heras Cedeño was "murder, self-defense, or a mutual combat").) These arguments illustrate that a key reason Leon Heras seeks discovery is to investigate and establish a defense. As a general rule, however, "evidence of alibi or of facts contradicting the demanding country's proof or of a defense such as insanity may properly be excluded" from an extradition hearing. *Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2d Cir. 1973); *Kapoor v. Dunne*, 606 F. App'x 11, 12 (2d Cir. 2015) (quoting *Shapiro*); *Skaftouros v. United States*, 667 F.3d 144, 155 n.16 (2d Cir. 2011) (citing *Shapiro* and reiterating that a relator's right to introduce evidence is limited to explanatory, not contradictory, evidence); *see also Collins*, 259 U.S. at 316–17; *Pena-Bencosme*, 341 F. App'x at 683.

In addition, although the improbability of witness testimony may be relevant to a probable cause determination, *Shapiro*, 355 F. Supp. 563 at 572, the Court concludes that the information Leon Heras is seeking here will not assist the Court in evaluating improbability or vagueness of the evidence on the current record. As illustrated above, Leon Heras's discovery requests are best understood as an effort to gather evidence to establish a defense claim, not evidence that will help to explain arguably contradictory evidence. Other than pointing to potential discrepancies in timing and concerns about

Ms. Mejia's testimony, Leon Heras has not articulated cognizable improbabilities or unclear areas of evidence that require clarification.

The Supplement, which admittedly was filed after Leon Heras's discovery requests were made, provides a detailed overview of various potential witnesses, shedding additional light on the evidence that may be relied upon at the extradition hearing and, ultimately, at trial in Ecuador should Leon Heras be extradited. (*See* Supplement, ECF No. 19-1.) As noted *supra*, the Supplement also explains that the court did not rely on Ms. Mejia's testimony in the evidentiary analysis at the trial.[3] (Supplement, ECF No. 19-1, at ECF pages 38, 52, & 64.) The additional information Leon Heras seeks pertaining to Ms. Mejia is, accordingly, not justified; his requests as to her are denied. In addition, Leon Heras is not entitled to additional details uncovered during the Ecuadorian investigation, or further explication of the witness testimony, nor is he entitled to take depositions. These discovery requests are likewise denied.

Finally, information related to any communications between U.S. government agents and the Ecuadorian government concerning Leon Heras's brief detention at the border is wholly irrelevant to the Court's evaluation of probable cause. In support of this request, the defense cites *In re Extradition of Ernst*, No. 19-CRIM-MISC-1, 1998 WL 395267, at *4 (S.D.N.Y. July 14, 1998), where the court granted limited discovery concerning the demanding country's withdrawal of a prior extradition request. (Discovery Mot., ECF No. 18, at 4.) *Ernst* involved a relator who had been convicted prior to the extradition request, and as to whom the foreign government did not request

---

[3] The court explained that Ms. Mejia is a "[d]isabled deaf-mute" who was assisted by another individual who usually understands her, but that her testimony presented "subjectivities," could be "understood in different ways," and was "confusing, tangled and not precise." (Supplement, ECF No. 19-1, at ECF page 52.) Accordingly, the court concluded that "it will not be considered in the evidentiary analysis." (*Id.*)

extradition for a number of years. *In re Ernst*, 1998 WL 395267, at *2; *see also In re Ernst*, No. 97-CRIM-MISC-1, 1998 WL 167324 (S.D.N.Y. Apr. 9, 1998) (permitting limited discovery due to inconsistencies between extradition requests so as to determine whether an extradition proceeding was pending at a particular point in time).

*Ernst* has almost no bearing on this case. Leon Heras relies on *Ernst* to support his request for discovery of communications that occurred between Ecuador and the United States when he was briefly detained at J.F.K. Airport in February 2015, "including but not limited to documents detailing the reason or reasons why Ecuador declined to take custody of him at that time." (Mot. for Discovery, ECF 18, at 4.) At the time Leon Heras was briefly detained, however, Ecuador had not submitted a formal extradition request. (*See* Lindsay Decl., ECF No. 1-1, ¶ 3; Extradition Request, ECF No. 1-1, at 4 (dated June 24, 2015); Compl., ECF No. 1, ¶¶ 4, 5.) In addition, there is no evidence from which to infer that there are inconsistencies to resolve in regard to any communications that may have occurred between the U.S. and Ecuador. Even if there were, it strains logic to conclude that pre-extradition proceeding communications would be relevant to a probable cause analysis, which must look at the charged crime and proffered evidence. *See Shapiro*, 478 F.2d at 900–01. Leon Heras's request for discovery regarding such communications is denied.

## CONCLUSION

For the reasons discussed above, Leon Heras' motion for discovery is denied.

**SO ORDERED.**

Dated: Brooklyn, New York
December 16, 2022

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

8